UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>      vs.<br><br>DANNY FERGUSON,<br><br>                    Defendant. | CR. 15-50082-JLV<br><br><br>ORDER |

## INTRODUCTION

A jury convicted defendant Danny Ferguson of committing arson in
Indian country in violation of 18 U.S.C §§ 81 and 1153.   (Dockets 70 & 106).
Defendant filed post-trial motions.   (Dockets 109 & 143).   He seeks a
judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal
Procedure or a new trial under Rule 33(a).   Id.   The government opposes
defendant's motions.   (Docket 145).   For the reasons stated below, the court
denies defendant both a judgment of acquittal and a new trial.

## TRIAL EVIDENCE

The court limits its recitation to those facts necessary to resolve
defendant's pending motions.   In the subsequent legal analysis, the court
includes additional facts as needed.   The court relies primarily on transcripts
of the trial proceedings as well as its recollection of the evidence presented at
trial.   See Dockets 134-36.

## I. Government's Trial Evidence

### A. April 7, 2015 fire at Christy Pierce's home

In April of 2015, Christy Garnette Pierce lived in a trailer home in a rural area approximately six and a half miles north of Kyle, South Dakota, which is located on the Pine Ridge Reservation. (Docket 134 at pp. 72, 76-77, 96). Ms. Pierce purchased the home from Devonna Clifford, also the owner of the land on which the home was situated, and obtained permission from her to reside on the land. Id. at pp. 72-74. At that time, two of Ms. Pierce's children and one grandchild were living with her in the home. Id. at pp. 78, 87.

Ms. Pierce testified she smelled the odor of burning wood on the evening of April 7. Id. at p. 78. Her dogs began barking and her daughter "heard something outside." Id. at p. 77. Ms. Pierce looked outside that evening and did not see anything; she testified she believed the smell was from her daughter's space heater. Id. at pp. 77-78.

Ms. Pierce's son Samuel Rios arrived at the home on the morning of April 8. Id. at p. 78. Mr. Rios had been staying with his grandfather and decided to visit Ms. Pierce after arguing with him. Id. at p. 125. After Mr. Rios arrived at Ms. Pierce's home, she saw burn marks on the front corner of the trailer. Id. at p. 79. She believed "there was a fire outside [her] trailer" and "somebody tried to burn [them] out." Id. at p. 80. She then notified tribal police and filed a report with an officer who arrived at her home that afternoon. Id. at pp. 80-81. She observed an unfamiliar juice jug near the burn marks which smelled "[l]ike gas, like kerosene." Id.

**B.     April 8 fire and observations of defendant at Pierce home**

Around 5 p.m. on April 8, Ms. Pierce observed defendant drive by her home on a motorcycle.[1]  Id. at pp. 82-83.   She initially believed he was in the area to tend to his livestock.   Id. at p. 84.   However, the walls of her trailer began to vibrate and Ms. Pierce believed defendant had pushed his motorcycle up against the trailer.   Id.   Mr. Rios then left the trailer, followed by Ms. Pierce, to investigate.   Id. at p. 130.   Mr. Rios testified he then observed defendant sitting on the motorcycle, which was leaned against the trailer, "stuffing a blanket into the insulation underneath the trailer[.]"   Id. at pp. 130-31.   He further testified he observed defendant lighting the blanket on fire.   Id. at p. 130.   The blanket was entered into evidence as exhibit 106.   Id. at pp. 56-58, 130-31.   Ms. Pierce testified she observed defendant bent over, stuffing the blanket under the trailer.   Id. at pp. 85-86.   She observed flames. Id. at p. 84-85.   However, she only saw defendant's hair, not his face.   Id. at p. 85.   Mr. Rios testified he shouted at defendant and he rode off on the motorcycle away from the home.   Id. at pp. 132-33.   He then pulled the burning blanket out from the insulation and smothered the fire by stomping on the blanket and covering it with his jacket.   Id. at p. 135.

Defense counsel cross-examined both Ms. Pierce and Mr. Rios.   (Dockets 134 at pp. 94-115, 121-124 & 135 at pp. 2-25, 34-35).   During cross-

---

[1]Witnesses variously referred to defendant's vehicles as motorcycles, motorbikes, or dirt bikes.   Photographs of the vehicles were admitted into evidence as trial exhibits 13-20 and 46-48.   To recount the evidence as it was received by the jury, the court repeats the terms used by each individual witness.

examination, Ms. Pierce testified she first observed defendant ride on a motorcycle through a window for "about four or five seconds." (Docket 134 at p. 108). She also testified regarding conflicts with defendant's family, stating defendant's father rammed her truck. Id. at p. 97. Defense counsel questioned Ms. Pierce as to whether she let defendant's livestock out of a gated area, but Ms. Pierce denied doing so. Id. at pp. 97-98.

On cross-examination, Mr. Rios testified he first saw defendant through a window for approximately three seconds. (Docket 135 at p. 6). He recognized the person he saw through the window as defendant. Id. at p. 8. After moving outside, he saw defendant on the motorcycle for approximately three or four seconds before defendant left the area. Id. at p. 9. Mr. Rios had last seen defendant approximately six or seven years ago. Id. at p. 11. Mr. Rios also agreed with defense counsel's statement that Ms. Pierce "essentially hated the Fergusons[.]" Id. at p. 35.

While Mr. Rios was putting the fire out, Garfield Iron Crow arrived at the home, drawn by the flame and smoke.[2] (Dockets 134 at p. 88 & 135 at p. 161). Mr. Iron Crow, a relative of Ms. Pierce, lived near Ms. Pierce's home in the same rural region north of Kyle. (Dockets 134 at p. 88 & 135 at pp. 159-60). He observed "a combustion type of flame that grew to like a flash in the air." (Docket 135 at p. 161). Mr. Iron Crow testified to observing Mr. Rios putting out the fire with a gray blanket. Id. at p. 162. He then observed Mr. Rios place the blanket underneath the trailer and subsequently remove it again

---

[2]Mr. Iron Crow was a defense witness. The court recounts his testimony in this section of its factual recitation to preserve narrative continuity.

and walk around to the other side of the home.  Id. at pp. 162-64.  Mr. Iron Crow testified Mr. Rios returned with a garden rake—holding it "like he was going to throw it"—and asked him, "Are you with them?"  Id. at p. 164.  The government cross-examined Mr. Iron Crow.  Id. at pp. 168-179.  During cross-examination, Mr. Iron Crow testified he saw the fire approximately five feet from the home.  Id. at pp. 170-71.  He also testified he never told law enforcement about either observing Mr. Rios with the blanket or observing the fire away from the home.  Id. at p. 173.

The government called Special Agent James Olsen of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") as a witness ("SA Olsen").  In 2015, SA Olsen was a certified fire investigator with the ATF.  (Docket 134 at p. 40).  He inspected Ms. Pierce's home on April 28.  Id. at p. 41.  Based on his investigation, SA Olsen concluded the fires on April 7 and 8 were intentionally set, not accidental.  Id. at pp. 54-55.  He testified trailer homes are vulnerable to fire damage and opined Ms. Pierce's home would have become "untenable for occupants" within 20 to 25 minutes after the fires at issue were set.  Id. at pp. 55-56.  Defense counsel cross-examined SA Olsen.  Id. at pp. 59-63.

### C.    Questioning and confession of defendant

Federal Bureau of Investigation ("FBI") Special Agent Michelle Gruzs ("SA Gruzs") investigated Ms. Pierce's arson report.  Id. at pp. 40-41.  Both Ms. Pierce and Mr. Rios told SA Gruzs the arsonist was defendant.   On April 29, SA Gruzs interviewed defendant at his home.  Id. at p. 47.  Defendant denied setting fire to Ms. Pierce's home.  Trial ex. 53.  SA Gruzs observed several

5

motorbikes at defendant's home.   Id. at pp. 52-55.   The motorbikes all appeared functional, with no visible tire issues.   Id. at pp. 54-55.

On May 15, defendant participated in another interview with law enforcement at the Pine Ridge Justice Center in Pine Ridge, South Dakota.   Id. at p. 56.   Special Agent Jeff Goble ("SA Goble") of the South Dakota Division of Criminal Investigation also participated in the interview but did not testify at trial.   Id.   The audio of a portion of this interview was entered into evidence as exhibit 1.   Id. at 59-60.   At this interview, defendant appeared to confess he had set the fire.   In response to SA Goble's question as to why he set the fire, defendant stated he did not believe anyone was in the home and he did not believe Ms. Pierce had a right to have her home there.   Trial ex. 1 at 0:56-1:25. He continued, "It would make everybody happy that that house would be gone."   Id. at 1:30-35.   He stated he "felt so bad that there was someone in there" and "I wished it'd never happened."   Id. at 2:47-52.   In response to SA Goble's question of how he set the fire, defendant stated he used "gas and a lighter."   Id. at 3:38-59.   He stated he splashed a gas and diesel mixture on a wood portion of the trailer's exterior where he "wanted to try to get going."   Id. at 4:07-24.   He stated he then saw someone come around the corner of the home, causing him to flee.   Id. at 4:38-50.   Defense counsel cross-examined SA Grusz.   (Docket 135 at pp. 64-79).

## II.   Defendant's Trial Evidence

Defendant's tribal advocate John Witt requested to be present with defendant during the questioning on May 15.   (Docket 136 at p. 30).   SAs Goble and Grusz refused.   Id. at pp. 30-31.   During direct examination, Mr.

6

Witt mentioned the FBI "wanted to do a polygraph" test of defendant. Id. at p. 28. At the pretrial conference, the court granted defendant's motion *in limine* to exclude all evidence of defendant's polygraph examination. (Docket 93 at p. 2). After Mr. Witt mentioned the polygraph test, the court immediately instructed the jury to disregard Mr. Witt's testimony regarding the polygraph test. (Docket 136 at pp. 29-30).

Defendant offered alibi evidence. (Docket 45). Three of defendant's relatives, including his wife and mother, testified defendant was at the homes of various family members during the evening of April 8. (Dockets 135 at pp. 86-88 & 136 at pp. 35-43, 82, 85-87). Defendant's wife Delores Ferguson specifically testified defendant ate dinner with her, his mother, and other family members at his mother's home between approximately 5 and 6 p.m. on April 8. (Docket 136 at pp. 85-86). Afterwards, they went to Kyle to see what movies were playing at a theater there. Id. On the way back home, they stopped at the home of his aunt Arlene Ferguson and stayed there until approximately 7 or 8 p.m. Id. at p. 86. Delores Ferguson testified defendant was with her from the time she arrived home from work at 5 p.m. until they went to bed that evening. Id.

Defendant also offered testimony from five witnesses to show defendant's motorbikes were inoperable at the time he was seen riding a motorbike to set fire to Ms. Pierce's home. (Dockets 135 at pp. 181-82, 191, 199-201 & 136 at pp. 46, 88). Eliel Poor Bear, who was defendant's employee in March and April of 2015, testified defendant owned two dirt bikes which had flat tires at that time. (Docket 135 at pp. 181-82). Kyle Ferguson, the defendant's

nephew, testified to repairing the wheels on two of defendant's motorbikes on April 16. Id. at pp. 199-200, 202.

**ANALYSIS**

**I.     Rule 29(c) Motion**

Defendant moved for a judgment of acquittal at the conclusion of the government's case-in-chief and again prior to closing arguments. (Dockets 135 at pp. 122-24 & 136 at pp. 98-99). The court denied both motions, finding there was sufficient evidence for the jury to establish each element of the arson charge beyond a reasonable doubt. (Dockets 135 at p. 123 & 136 at p. 99). Defendant renews his Rule 29 motion. (Dockets 109 & 143). Defendant timely filed the Rule 29(c) motion within 14 days of the verdict. Fed. R. Crim. P. 29(c)(1).

**A.     Rule 29(c) standard**

Fed. R. Crim. P. 29(c) gives the district court authority to set aside a guilty verdict and enter an acquittal upon a defendant's post-trial motion. "A district court has very limited latitude in ruling upon a motion for judgment of acquittal." United States v. Baker, 367 F.3d 790, 797 (8th Cir. 2004) (citation and internal quotation marks omitted). "A motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." United States v. Boesen, 491 F.3d 852, 855 (8th Cir. 2007) (citations and internal quotation marks omitted). This standard is very strict, and the court should not overturn a jury verdict lightly. Id.

The district court must enter an acquittal if the evidence presented at trial is insufficient to sustain a conviction. Id. Evidence may be direct or circumstantial. Baker, 367 F.3d at 798. "Evidence supporting a conviction is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Boesen, 491 F.3d at 856 (citation and internal quotation marks omitted). The district court must not weigh the evidence or assess the credibility of witnesses. Baker, 367 F.3d at 797; see also Boesen, 491 F.3d at 857 ("In ruling on a motion for a judgment of acquittal, the role of the court is not to weigh the evidence . . . but rather to determine whether the Government has presented evidence on each element to support a jury verdict.") (citations and internal quotation marks omitted) (ellipses in original).

The district court "views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict." Boesen, 491 F.3d at 856. In short, the court upholds the jury verdict if "drawing all reasonable inferences in favor of the verdict, there is an interpretation of the evidence that would allow a reasonable minded jury to find the defendant[] guilty beyond a reasonable doubt." Id. (citations and internal quotation marks omitted; alteration in original).

### B.    Jury verdict

The court instructed the jury on the elements of arson.    (Docket 134 at pp. 12-14).    There are five elements in this case: (1) on or about between April 6, 2015 and April 8, 2015, defendant set fire to or burned a dwelling or attempted to do so; (2) the dwelling belonged to Christy Garnette Pierce; (3) defendant acted willfully and maliciously; (4) defendant caused Ms. Pierce or her family members' lives to be placed in jeopardy; and (5) defendant is an Indian person and the offense took place in Indian country at Kyle, South Dakota.[3]  Id.    In its instruction on the elements of arson, the court defined the terms willfully and maliciously.    Id. at p. 14.    The jury also received an instruction on eyewitness testimony and identification.    (Docket 136 at pp. 100-02).    "The issue here is whether an interpretation of the evidence allows a reasonable-minded jury to find [defendant] guilty, beyond a reasonable doubt, of" arson.    See Boesen, 491 F.3d at 856.    Because the court concludes that interpretation of the evidence exists, the court finds defendant fails to demonstrate he is entitled to a judgment of acquittal.

The testimony of Ms. Pierce and Mr. Rios establish the first through fourth elements of arson.    Defendant's recorded May 15 interview with law enforcement also provided evidence of these elements.    Prosecution witness SA Olsen testified to the third element.    The parties stipulated to the fifth element.

---

[3]The parties stipulated defendant, as an enrolled member of the Oglala Sioux Tribe, is an Indian person and the offense took place in Indian country. (Docket 135 at p. 36).

Ms. Pierce testified to owning the trailer home that was burnt in the arson. (Docket 134 at pp. 72-74). Ms. Pierce and Mr. Rios both testified three other people were in the trailer at the time of the fire, Ms. Pierce's two daughters and her granddaughter. Id. at pp. 82, 86-87, 130, 133-34. They also both testified to observing defendant at Ms. Pierce's home at the time the fire occurred. Id. at pp. 82-86, 129-30. Mr. Rios specifically testified to observing defendant stuffing a blanket underneath Ms. Pierce's trailer home and lighting it on fire. Id. at p. 130. SA Olsen testified the fire would have engulfed the home within 20 to 25 minutes. Id. at pp. 55-56. During his May 15 interview defendant stated, "It would make everybody happy that that house would be gone," referring to Ms. Pierce's home  Trial ex. 1 at 1:30-35. He stated he "felt so bad that there was someone in there" and "I wished it'd never happened." Id. at 2:47-52. Defendant further stated he used "gas and a lighter," in response to a question asking how he set the fire. Id. at 3:38-59. This testimony, if believed, was sufficient for the jury to find beyond a reasonable doubt defendant willfully and maliciously set fire to a dwelling owned by Ms. Pierce, causing the lives of her or her family members to be placed in jeopardy.

## C.  Conclusion

Based on the trial record, the court finds a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Boesen, 491 F.3d at 856 (internal quotation marks omitted). Put another way, the court finds the record fails to establish that "there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty

beyond a reasonable doubt." Id. at 855 (internal quotation marks omitted). The court comes to this conclusion after "drawing all reasonable inferences in favor of the verdict[.]" Id. at 856 (internal quotation marks omitted). The court denies defendant's Rule 29(c) motion.

## II.  Rule 33(a) motion

### A.  Rule 33(a) standard

Fed. R. Crim. P. 33(a) gives the district court authority to vacate a judgment and grant a new trial in the interest of justice. Defendant timely filed his motion within 14 days of the verdict. Fed. R. Crim. P. 33(b)(2). The decision to grant or deny a Rule 33 motion "is within the sound discretion of the [district] court." United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002). The court's discretion is both broad and limited. Id. It is broad to the extent the court "can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." Id. (internal quotation marks and citations omitted). "[T]he court need not view the evidence most favorably to the verdict." United States v. Worman, 622 F.3d 969, 977 (8th Cir. 2010); United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000) (In determining whether to grant a Rule 33 motion, "the court need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses.").

The court's discretion is limited to the extent the court must allow the jury's verdict to stand unless it determines a miscarriage of justice will occur.

12

Id.; see also United States v. McCraney, 612 F.3d 1057, 1064 (8th Cir. 2010) ("Where a defendant moves for a new trial on the grounds that the verdict is contrary to the weight of the evidence, the district court should grant the motion if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.") (internal quotation marks and citation omitted); Worman, 622 F.3d at 978 ("A district court will upset a jury's finding only if it ultimately determines that a miscarriage of justice will occur."); United States v. Camacho, 555 F.3d 695, 705 (8th Cir. 2009) ("[A] new trial motion based on insufficiency of the evidence is to be granted only if the weight of the evidence is heavy enough in favor of acquittal that a guilty verdict may have been a miscarriage of justice."); United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980) ("If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.").

Because a motion for new trial based on the weight of the evidence is "generally disfavored," the district court should use its authority to grant a Rule 33 motion "sparingly and with caution." Campos, 306 F.3d at 579 (internal quotation marks and citations omitted); see also United States v. Bertling, 510 F.3d 804, 808 (8th Cir. 2007) ("A district court should not grant a

motion for a new trial simply because it would have reached a different verdict.") (citations omitted).

**B.    Defendant's arguments**

Defendant makes nine distinct arguments in support of his motion for a new trial.   These arguments generally attack the sufficiency of the evidence introduced at trial.   As summarized from defendant's second motion for acquittal or a new trial, they are:

1.    Defendant twice specifically denied to law enforcement starting any fire at Ms. Pierce's home.   (Docket 143 at p. 1).

2.    Defendant's May 15 interview with law enforcement should not have been admitted due to legal issues and defendant's mental impairments.   Id. at pp. 1-3.

3.    There was no evidence Ms. Pierce's home was ignited.   Id. at p. 3.

4.    There was no "objective physical evidence" placing defendant at Ms. Pierce's home.   Id. at pp. 3-4.

5.    Ms. Pierce's and Mr. Rios' identifications of defendant were faulty and unreliable.   Id. at pp. 4-5.

6.    Defendant offered unrefuted evidence he had no operable dirt bikes on April 8.   Id. at pp. 5-6.

7.    Defendant offered alibi evidence.   Id. at p. 6.

8.    Defendant offered evidence of Ms. Pierce's and Mr. Rios' poor reputations for truthfulness in the community.   Id. at p. 6.

9.    Defense witness John Witt mentioned defendant's polygraph test in violation of the court's order *in limine*.   Id. at pp. 6-7.

The court will address each argument individually.

### 1. Defendant's denials

Defendant denied starting any fire at Ms. Pierce's home in both of his interviews with law enforcement.   (Docket 135 at p. 78).   However, defendant's denials were contradicted by defendant himself and by the victims of the offense.   Defendant incriminated himself in his May 15 interview with law enforcement, confessing to the method he used to set the fires.   Trial ex. 1 at 3:38-59.   Ms. Pierce and Mr. Rios both observed defendant at Ms. Pierce's home on the evening of April 8.   (Docket 134 at pp. 82-86, 129-30).   Mr. Rios saw defendant set the April 8 fire.   Id. at p. 130.   Given the weight of evidence against defendant's denials, the court finds they do not justify a new trial.

### 2. Admission of defendant's May 15 interview with law enforcement

Defendant contends the court should not have admitted his May 15 interview with law enforcement into evidence.   (Docket 143 at pp. 1-3).   This issue has been thoroughly litigated.   Defendant moved to suppress the interview for the same issues he raises in his motion for a new trial.   (Docket 21).   Magistrate Judge Daneta Wollmann recommended the court deny defendant's motion to suppress in a thorough and well-reasoned report and recommendation.   (Docket 44)   The court accepted the report and recommendation and denied defendant's motion to suppress, overruling his objections.   (Docket 52).   On the first day of trial, outside the presence of the jury, the court granted defense counsel a standing objection to any mention of

defendant's May 15 statements to law enforcement.   (Docket 134 at pp. 138-39).   On the second day of trial, the court overruled the standing objection and admitted the recorded interview into evidence.   (Docket 135 at 58).   Defendant raises no new arguments as to the admissibility of his May 15 statements and the court sees no reason to revisit its rulings on this matter.   The admission of these statements into evidence does not weigh in favor of granting a new trial.

### 3.   Evidence Ms. Pierce's home was ignited

Defendant argues "there was insufficient evidence that any arson took place" because "[t]here was no evidence presented that the trailer house was ignited." (Docket 143 at p. 3).   Defendant characterizes the evidence at trial as showing only "that material on the ground such as insulation or pressed wood had smoke or black soot marks on them." Id.

Defendant's assertion is contradicted by the testimony of Mr. Rios and Mr. Iron Crow, his own statements, and photographs admitted into evidence. Mr. Rios observed defendant stuff a blanket into the insulation underneath the trailer and light the blanket on fire.   (Docket 134 at p. 130).   Mr. Iron Crow observed a "combustion type of flame that grew to like a flash in the air" when he was approximately 100 yards from Ms. Pierce's home.   (Docket 135 at p. 161).   Defendant himself admitted to splashing a gas and diesel mixture on a wood portion of the home's exterior.   Trial ex. 1 at 4:07-24.   Finally, the court received into evidence photographs showing the charred corner of Ms. Pierce's home.   Trial exs. 27 & 44-45.   The court finds the weight of evidence

at trial showed Ms. Pierce's home was damaged by fire and will not grant a new trial on this basis.

### 4. Lack of physical evidence

Defendant correctly notes the government did not offer any "objective physical evidence"—he specifies fingerprints, DNA, and tire tracks—to show he was at Ms. Pierce's home at the time of the fire. (Docket 143 at pp. 3-4). The United States Court of Appeals for the Eighth Circuit "repeatedly upheld jury verdicts based solely on the testimony of . . . witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." United States v. Buckley, 525 F.3d 629, 632 (8th Cir. 2008). "No physical evidence [is] necessary: 'a victim's testimony alone can be sufficient to support a guilty verdict.' " United States v. Stoney End of Horn, 829 F.3d 681, 685 (8th Cir. 2016) (quoting United States v. Seibel, 712 F.3d 1229, 1237 (8th Cir. 2013)).

There is sufficient testimonial evidence showing defendant was present at Ms. Pierce's home. Ms. Pierce and Mr. Rios both testified to observing defendant at the home when the April 8 fire was set. (Docket 134 at pp. 82-86, 129-30). Defendant, in his May 15 interview with law enforcement, described how he set fire to Ms. Pierce's home and admitted to fleeing the area when he saw another person approach. Trial ex. 1 at 3:38-59; 4:07-24; 4:38-50. The court will not grant a new trial on this basis.

### 5.    Unreliable witness identifications

Defendant contends Ms. Pierce's and Mr. Rios' identifications of defendant were "faulty and inherently suspect under the jury instruction on identification." (Docket 143 at p. 4).   In support of this argument, defendant points to the short amount of time each witness observed defendant, contradictions in the witnesses' testimony, and the conflicts between the Fergusons and Ms. Pierce to discredit the identifications.   Id. at pp. 4-5.   The court instructed the jury on identifications as follows:

> [Y]ou should also consider whether the witness had an adequate opportunity to observe the person in question at the time of the offense.   You may consider the length of time the witness had to have observed defendant in question, the prevailing conditions at that time in terms of visibility or distance, and the like, and whether the witness had known or observed the defendant at earlier times.
>
> You should also consider whether the identification made by the witness after the offense was the product of their own recollection. You may consider the strength of the identification, the circumstances under which the identification was made, and the length of time that elapsed between the occurrence of the crime and the next opportunity the witness had to see the defendant.

(Docket 136 at p. 101).

The jury evidently found Ms. Pierce's and Mr. Rios' identifications to be reliable.   The court acknowledges there is support for defendant's view that the identifications were unreliable.   At the time of the April 8 fire, Ms. Pierce and Mr. Rios both observed defendant only for a very brief period of time under chaotic circumstances.   However, defendant admitted to fleeing Ms. Pierce's home on April 8 after being spotted by another person.   Trial ex. 1 at 4:38-50.

18

The defendant's own statement corroborates the witnesses' identification testimony.   As a result, the court cannot conclude it would be a miscarriage of justice to deny defendant's motion for a new trial on this basis.

**6.    Defendant's inoperable dirt bikes**

Five of defendant's witnesses testified defendant's dirt bikes were inoperable on April 8.   (Docket 143 at p. 5).   Defendant's theory, which he offered to the jury, is that Ms. Pierce and Mr. Rios cannot have seen defendant on a dirt bike because all his dirt bikes were inoperable.

The government cross-examined all of defendant's witnesses on this point.   Each of these witnesses were relatives or employees of defendant. (Dockets 135 at pp. 182, 188, 202 & 136 at pp. 35, 82).   The government introduced a letter written by defendant's mother Kay Ferguson which purported to establish the motorbikes were inoperable.   Docket 136 at pp. 56-57; Trial ex. 115.   Three of these witnesses testified they signed Kay Ferguson's letter to "help Danny out."   (Docket 135 at pp. 184, 195, 201-02). Defendant introduced an invoice written by his nephew Kyle Ferguson stating he completed "bike tire repair" work for defendant on April 15, 2015.   Trial ex. 203.   On cross-examination, Kyle Ferguson testified he supplied the receipt "just so [he] could get ten bucks" because he was "always out of gas."   (Docket 135 at p. 203).   He also testified he got the invoice booklet in 2016, but the receipt was purportedly written in 2015.   Id. at p. 204.

Given the government's impeachment of defendant's witnesses on this issue, the court cannot conclude a miscarriage of justice occurred because the jury could have easily disbelieved the defense witnesses' testimony regarding the operability of defendant's dirt bikes. The evidence on this point does not weigh heavily against the verdict. The court will not order a new trial on this basis.

### 7. Defendant's alibi

Defendant presented an alibi to the jury. <u>See</u> Docket 45. Three of defendant's relatives, including his wife and mother, testified defendant was at the homes of various family members during the evening of April 8. (Dockets 135 at pp. 86-88 & 136 at pp. 35-43, 82, 85-87). Defendant raises his alibi evidence again as a reason the court should grant him a new trial. (Docket 143 at p. 6).

The government cross-examined these witnesses. The government confronted Leonard "Willie" Ferguson, defendant's cousin, with inconsistencies in his testimony regarding when defendant was with him at his mother's house. (Docket 135 at p. 93). Willie Ferguson also signed the letter drafted by defendant's mother discussed above in Section II.B.6. <u>Id.</u> at pp. 91-93. On cross-examination, defendant's mother Kay Ferguson testified members of the Ferguson family "work together because together we win, divided we fall." (Docket 136 at p. 59). She also stated she wrote the letter attesting to defendant's alibi after she knew defendant's case was going to court. <u>Id.</u> at

p. 58.   The government also cross-examined defendant's wife Delores Ferguson

suggesting she created defendant's alibi in response to the federal charges.   Id.

at pp. 89-91.

As with defendant's dirt bike witnesses, the court cannot conclude a

miscarriage of justice occurred simply because the jury chose to disbelieve

defendant's alibi witnesses.   The government impeached these witnesses to an

extent sufficient to convince the court the evidence of defendant's alibi does not

weigh heavily against the jury's verdict.   The court will not order a new trial on

this basis.

### 8.      Character evidence against Ms. Pierce and Mr. Rios

Defendant called three witnesses to testify as to their opinions of Ms.

Pierce's reputation for dishonesty in the community.   (Docket 136 at pp. 9-10,

75-76, 80-82).   The government cross-examined the first two witnesses.   Id. at

pp. 10-18, 76-77.   On cross-examination, Roger Keester testified he is

defendant's nephew, that he had known defendant his whole life, and that he

signed the letter discussed in Section II.B.6.   Id. at pp. 12, 14.   Garrett

Dugan, the second of defendant's character witnesses, testified on cross-

examination to only meeting Ms. Pierce four times and to being involved in a

land dispute with her and the Ferguson family.   Id. at pp. 76-77.   The

government did not cross-examine defendant's third character witness, Ronald

Ferguson.   On direct examination, Ronald Ferguson testified he is defendant's

cousin and that Ms. Pierce falsely reported him to a park ranger for selling green wood.   Id. at pp. 78, 80-81.

Similar to defendant's alibi and dirt bike witnesses, the court will not conclude a miscarriage of justice occurred because the jury chose to disbelieve defendant's character witnesses.   The government impeached defendant's first two character witnesses and the third testified on direct examination to being a relative of defendant with a separate dispute with Ms. Pierce.   The court does not find the heavy weight of evidence militates against the verdict simply because the jury disbelieved these witnesses.   Finally, although defendant alleged his character witnesses testified to Mr. Rios' "poor reputation[] in the community for truth and veracity," the court observes none of his witnesses mentioned Mr. Rios.   (Docket 143 at p. 6).   Under defendant's logic, Mr. Rios' character for truthfulness was unassailed and the jury was entitled to believe his testimony regarding defendant setting the April 8 fire.   The court declines to order a new trial on this basis.

### 9.    Mention of defendant's polygraph test

Defense witness John Witt, who served as defendant's tribal advocate, stated in the presence of the jury, "Danny indicated to me that the FBI wanted to do a polygraph on him."   (Docket 136 at pp. 27-28).   The court, at a pretrial conference, granted defendant's motion *in limine* to exclude all evidence of defendant's polygraph examination.   (Docket 93 at p. 2).   Immediately following Mr. Witt's statement, defense counsel requested a cautionary

instruction and the court instructed the jury to "totally disregard" Mr. Witt's statement because "[p]olygraphs are completely totally unreliable in criminal matters."  (Docket 136 at pp. 29-30).   Defendant now argues the jury "obviously gave [the statement] weight in returning a verdict of guilty" and that the statement "constitutes plain error affecting the fairness and impartiality of the proceedings" despite the cautionary instruction.   (Docket 143 at pp. 6-7).

The court disagrees.   It is true "the results of unstipulated polygraph examinations should not be admissible in evidence at a criminal trial."   United States v. Alexander, 526 F.2d 161, 166 (8th Cir. 1975).   However, the results of defendant's polygraph test were not admitted into evidence.   At issue here is merely a statement that the FBI wanted to perform a polygraph test on defendant, followed by an immediate cautionary instruction.   There is no evidence the jury concluded defendant submitted to a polygraph test, much less that the test showed defendant to be untruthful.   The court rejects defendant's contention the guilty verdict signifies the jury relied on Mr. Witt's single statement in making their decision.   If there is error, defendant "invited [it] through [his] questioning and cannot be heard to complain now."   United States v. Grandison, 781 F.3d 987, 991 (8th Cir. 2015) (citing Fed. Crop Ins. Corp. v. Hester, 765 F.2d 723, 727 (8th Cir. 1985) ("[I]t is fundamental that where the defendant opened the door and invited error there can be no reversible error.") (internal quotations omitted)).   The court will not order a new trial on this basis.

## C.     Conclusion

Based on the above factual recitation and legal analysis, the court does not find "the weight of the evidence is heavy enough in favor of acquittal that a guilty verdict may have been a miscarriage of justice."    Camacho, 555 F.3d at 705.    In making its determination, the court weighed the evidence and assessed the credibility of the witnesses.    See Lacey, 219 F.3d at 783-84.    The court considered the oral arguments of defense and government counsel at trial, counsel's written submissions and the trial transcripts.    The jury was faced with the difficult tasks of weighing the evidence and assessing witness credibility.    The jury was in the best position to perform this function. Although the jury's verdict was contrary to defendant's interests, that does not render the verdict a miscarriage of justice.    The court finds defendant is not entitled to a new trial under Fed. R. Crim. P. 33(a).

## ORDER

Based on the above analysis, it is

ORDERED that defendant's motions for a judgment of acquittal and a new trial (Dockets 109 & 143) are denied.

IT IS FURTHER ORDERED that an order will be entered scheduling the necessary deadlines for defendant's sentencing hearing.

Dated December 3, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE